**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| **DEAN PROPER** ) | |
| **Plaintiff,** ) | |
| ) | **C.A. No. 06-279 Erie - LEAD** |
| **v.** ) | |
| ) | |
| **CRAWFORD COUNTY** ) | |
| **CORRECTIONAL FACILITY, et al.,** ) | **Magistrate Judge Baxter** |
| **Defendants.** ) | |


**MEMORANDUM OPINION**

**M.J. Susan Paradise Baxter[1]**


**I.      Relevant Procedural History**

On November 28, 2006, Plaintiff, an inmate formerly incarcerated at the Crawford

County Correctional Facility, initiated this *pro se* action, raising various civil rights claims

arising out of his incarceration at the Crawford County Correctional Facility during 2004 and

2005.


**A)      The Original *Pro Se* Complaint**

In his Original Complaint, Plaintiff alleges that he advised prison staff that his personal

safety was being threatened by fellow inmates, but Defendants did nothing to protect him.  On

November 19, 2004, Plaintiff was attacked by inmate Lonnie Williams and on November 24,

2004, Plaintiff was again physically attacked, this time by inmate Justin Q. Smith. Plaintiff

alleges that both attacks resulted in serious physical injuries and that prison officials delayed in

_____

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have consented
to have a United States Magistrate Judge conduct proceedings in this case, including entry of a
final judgment.  ECF Nos. 161, 162, and 163.

providing him with proper medical attention. ECF No. 3.[2]

Named as Defendants to the Original Complaint were: the Crawford County Correctional Facility; Jail Nurse "Rick"; Jail Doctor Richard Moran; Warden Tim Lewis; Lt. Minor; Lt. Denman; Lt. Wyant; Correctional Officer Patterson, Correctional Officer Mrs. Fox; Correctional Officer Shrekengost; Correctional Officer Grundy; Correctional Officer Snow; Correctional Officer Mrs. Brown; Correctional Officer Shinko; Counselor Trisha Wolf; Counselor Ronda Kingston; Sgt. Meal; Sgt. Kosher; and Lt. McCune. Id.

On June 18, 2007, Plaintiff filed a Supplement to the Original Complaint expanding upon his claims and adding Jane Doe, a Correctional Officer who allegedly delayed his medical treatment following the first attack, as a Defendant. ECF No. 36.

Meanwhile, in December of 2006, Plaintiff filed a separate civil action in this Court at C.A. No. 06-304E alleging a false imprisonment claim against Crawford County Correctional Facility, Lewis, Kosher, Meal, Wyant, Denman and Minor (all Defendants named in the original complaint in this action). By Order dated June 27, 2007, this Court granted Plaintiff's motion to consolidate C.A. 06-304E with the instant matter and directed Plaintiff to file an amended complaint in this case to fully allege all his claims.

## B)     The First Amended Complaint

In his First Amended Complaint filed on September 7, 2007, Plaintiff expanded upon his earlier claims regarding the two separate assaults by fellow inmates and the subsequent delay in medical care. First Amended Complaint, ECF No. 52. Plaintiff also added the additional claim of false imprisonment stemming from a miscalculation of his sentence (consolidated from

---

[2] The nineteenth edition to The Bluebook: A Uniform System of Citation (Columbia Law Review Ass'n, et al. eds., 19th ed. 2010) provides citation form for court documents filed with the Electronic Case Management system. Rule B7.1.4. Although The Bluebook advises pinpoint citation to a document's original page number, this Court finds its practice of citing to the page number contained in the PACER header more efficient and will continue its prior practice of citing to that page number herein.

C.A. No. 06-304). Id. at ¶¶ 36-44.

Plaintiff summarized his allegations into the following counts: Count I - False or Wrongful Imprisonment; Count Two - Assault and Battery; Counts Three, Four and Five - Negligence; Count Six - Gross Negligence; Count Seven - Negligent Infliction of Mental Distress; and Count Eight - Intentional Infliction of Mental Distress. Id.

Named as Defendants to the First Amended Complaint were: the Crawford County Correctional Facility, Warden Tim Lewis, John and Jane Doe of the protective housing unit, Deputy Warden Sausberry [sic], Minor, Denman, Wyant, McCune, Coleman, Stewart, Meal, Kosher, Wolf, Kingston, Fox, Schrekengost, Grundy, Snow, Patterson, Barns, Brown, Shinko, Stevens, Rick, and Moran. Id. at ¶ 8.[3]


### C) The Second Amended Complaint[4]

Plaintiff obtained counsel around February of 2009. ECF No. 86. New counsel requested an extension of time in which to conduct discovery which was granted. On May 11, 2009, Plaintiff, through his newly obtained counsel, filed a Second Amended Complaint. ECF No. 92. Named as Defendants to the Second Amended Complaint are all Defendants from the First Amended Complaint, plus Nurse Cynthia Saulsbury, and fellow inmates Lonnie Williams and Justin Q. Smith.

The Second Amended Complaint alleges that Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments were violated and also alleges "specific state claims based on the torts of False Imprisonment, Assault and Battery, Negligence, Gross Negligence,

───────────────

[3] Within the body of the First Amended Complaint, Plaintiff referred to fellow inmates Lonnie Williams and Justin Q. Smith as Defendants, but they were not added as Defendants.

[4] An amended complaint generally supercedes (or takes the place of) the previously filed complaint. See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1504 (3d Cir. 1996) quoting Boelens v. Redman Homes, Inc., 759 F.2d 504, 507-08 (5th Cir. 1985); see also Hemispherx Biopharma, Inc. v. Asencio, 2000 WL 807012, at * 2 (E.D. Pa. 2000).

Negligent Infliction of Mental Distress and Intentional Infliction of Mental Distress, all of which were done with deliberate indifference and retaliation[5]."  The Second Amended Complaint lists the following counts:

> Count I - False or Wrongful Imprisonment;
>
> Count II - Assault and Battery;
>
> Count III - Negligence (failure to protect);
>
> Count IV - Negligence (failure to provide medical care);
>
> Count V - Negligence (failure to hire/train/supervise employees relating to both failure to protect and failure to provide medical care);
>
> Count VI - Gross Negligence;
>
> Count VII - Negligent Infliction of Mental Distress;
>
> Count VIII - Intentional Infliction of Mental Distress; and
>
> Count IX - Attorney Fees, Costs and Expenses.

ECF No. 92.  Although the counts of Plaintiff's counseled complaint are titled as state law tort claims only, Plaintiff makes federal civil rights allegations and arguments in his filings as well.  The content of the claims will be analyzed as pled, not as titled.[6]  The allegations and

---

[5]  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."  See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).
  In order to state a *prima facie* case of retaliation, a prisoner plaintiff  must allege: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him. Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Despite the repeated use of the word retaliation peppered throughout the Second Amended Complaint, Plaintiff has failed to allege the basic elements of a retaliation claim.

[6]  To draw a distinction based upon the headings of a particular pleading would be to "elevate form over substance, which is inappropriate in reviewing pleadings." Valentine v. Legendary Marine FWB, Inc., 2010 WL 1687738, at *2 (N.D. Fla. 2010).  See also Fed.R.Civ.P.

organization of the Second Amended Complaint do not indicate which claims are levied against which individual Defendants.

On June 2, 2009, Attorney Jeffrey Millin filed an Answer to the Second Amended Complaint on behalf of: Patterson, Fox, Shrekengost, Grundy, Snow, Brown, Shinko, Wolf, Kingston, Meal, Kosher, McCune, Crawford County Correctional Facility, "Rick", Moran, Lewis, Minor, Denman and Wyant. ECF No. 94.

On August 6, 2009, during a status conference, Jane Doe was identified as Kerri Thayer Boozer, John Doe was identified as Phil Smith, and Plaintiff voluntarily withdrew his claims against fellow inmates Lonnie Williams and Justin Smith. ECF No. 106.

On September 11, 2009, Defendants Deputy Warden Saulsbury, Nurse Cynthia Saulsbury, Kerri Thayer Boozer (formerly identified as Jane Doe), Stewart, Coleman, Barnes, and Phil Smith (formerly identified as John Doe) filed a motion to dismiss based upon the statute of limitations. ECF No. 109. By Report and Recommendation dated November 4, 2009, this Court recommended that the motion to dismiss be granted and that these named Defendants be dismissed from this action. ECF No. 126. Objections were filed and Judge McLaughlin heard oral argument on the matter before adopting the Report and Recommendation as the Opinion of the Court on December 29, 2009. ECF No. 151.

The Defendants who remain as parties to this litigation are Crawford County Correctional Facility, Jail Nurse Rick, Doctor Moran, Warden Lewis, Lt. Minor, Lt. Denman, Lt. Wyatt, Officer Patterson, Officer Fox, Officer Shrekengost, Officer Grundy, Officer Snow, Officer Brown, Officer Shinko, Counselor Wolf, Counselor Kingston, Sgt. Meal, Sgt. Kosher,

_____

8(e) (requiring courts to construe pleadings "so as to do justice"); Hussain v. Boston Old Colony Ins. Co., 311 F.3d 623, 633 n. 39 (5th Cir.2002) (noting that courts should construe a pleading liberally according to its substance rather than its form or titles); Trustees of I.A.M. Dist. No. 15 Health Fund v. Operant Material Solutions of New York New Jersey LLC, 2008 WL 4601792, at * 3 (D.N.J. 2008) ("Rule 8(e) directs district courts to construe pleadings 'so as to do justice,' which courts have understood to discourage the practice of dismissing a case for minor technical defects in the pleadings.").

Lt. McCune, and Stevens. Defendant Nurse Rick is represented by Fran Klemensic, Esq., while all other Defendants are represented by Jeffrey Millin, Esq.

Defendants moved for summary judgment against several of the counts of the Second Amended Complaint. ECF Nos. 144, 146. Concise Statements of Material Facts did not accompany the motions as required by Local Rule 56(B)(1), but each was filed one month later. ECF Nos. 157, 158.

In early February, 2010, the parties filed their respective consents to have an United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment. ECF Nos. 161, 162, and 163.

Plaintiff filed an opposition brief to the motions for summary judgment in March 2010. ECF No. 178. About a month later, Plaintiff filed "First Motion for Leave to File Motion's Exhibits 1 and 2 as New Evidence received this date for Inclusion in Plaintiff's Appendix and all other Plaintiff- filed documents responsive to Defendants' motion for summary judgment." ECF No. 193. Because the purported "new evidence" directly impacted the statute of limitations defense raised by Defendants, this Court reopened the long-closed discovery phase of this litigation on the limited issue of timeliness with respect to the filing of the Original Complaint. Defendants were allowed to supplement their pending motions for summary judgment and Plaintiff was allowed to supplement his opposition brief. ECF Nos. 205-209.

The issues are ripe for disposition by this Court.

## II.  Standards of Review

### A)  Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A

complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal/Phillips line of cases:

To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.'

\* \* \*

[A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to 'show' such an entitlement with its facts. As the Supreme Court instructed in <u>Iqbal</u>, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.' This 'plausibility' requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11(3d Cir. 2009) (emphasis added) (internal citations omitted).


### B) Motion for summary judgment pursuant to Rule 56

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c).

The moving party has the initial burden of proving to the district court the absence of

evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). Further, the non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; see also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Id. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### III.   Analysis

### A)     The Prison Litigation Reform Act

#### 1)     The Exhaustion Requirement

The Crawford County Defendants argue that some of Plaintiff's remaining claims (those of false imprisonment, failure to protect and the assault and battery) should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id (emphasis added).[7]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002).  See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[8]  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis

_____

[7] It is not a plaintiff's burden to affirmatively plead exhaustion.  Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); . Instead, the failure to exhaust must be asserted and proven by the defendants.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[8] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[9]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion).

### 2) The Administrative Process Available to County Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

The Crawford County Correctional Facility has established a multi-tier system whereby an inmate may seek formal review of any aspect of his imprisonment. The procedure is detailed in the General Population Handbook which is provided to every inmate upon his arrival. The written policy indicates that, initially "most routine housing unit questions and matters can be

---

[9] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process.").

handled directly by speaking with your housing unit officer." Exhibits to Motion to Dismiss, ECF No. 55-1, page 15. Next, the inmate must fill out a request form which is made available in his housing unit and which must be submitted to the housing unit officer. Inmate grievances can be obtained from the housing unit officer. Appeals of grievances are to be submitted to the deputy warden. Id. The Inmate Handbook does not indicate whether there are time limitations to the filing of a grievance. Id.

### 3) Exhaustion applied

The Crawford County Defendants argue that Plaintiff has failed to exhaust his administrative remedies in relation to his claims of false imprisonment, failure to protect and assault and battery.

In support of their argument in this regard, the Crawford County Defendants have provided evidence that Plaintiff did not exhaust his administrative remedies as to these issues[10]. Affidavit of Warden Tim Lewis, ECF No. 55-1, pages 2-5. During his incarceration at the Crawford County Correctional Facility, Plaintiff filed only two inmate **grievances** (one dated November 30, 2004 and the second dated December 6, 2004). Id. The November 30th grievance complains about Mr. Wykoff's "lying" to Plaintiff for three weeks regarding alcohol and drug counseling (ECF No. 61, page 7), while the December 6th grievance complains about the lack of pain medications (id. at 9). This evidence demonstrates that Plaintiff did not file any grievance regarding the failure to protect, the false imprisonment, or the assault and battery claims.

In opposition, Plaintiff generally swears under oath that he was repeatedly hindered or

---

[10] By Report and Recommendation dated May 8, 2008, the undersigned recommended that Plaintiff's Eighth Amendment claims be dismissed based upon his failure to exhaust his administrative remedies in accordance with the requirements of the PLRA. ECF No. 64. Following the filing of Objections by Plaintiff, acting *pro se*, District Judge McLaughlin declined to adopt the Report and Recommendation based upon Plaintiff's contention that he was thwarted/hindered in his efforts to exhaust. Judge McLaughlin indicated that Defendants retained the right to revisit the issue of exhaustion on a more fully developed record. ECF No. 72.

thwarted in his attempts to exhaust **all** of his administrative remedies on **all** of his claims. Affidavit of Plaintiff Dean Proper, ECF No. 176-2, pages 20-24.

The Third Circuit has invariably held that interference with an inmate's attempts at exhaustion impact the availability of the administrative remedy process. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." ). See also Berry v. Klem, 283 Fed. Appx. 1, 5 (3d Cir. 2009) ("[Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."); McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC-ADM 804 was never "available" to Brown within the meaning of 42 U.S.C. § 1997e.").

In this case, Plaintiff's affidavit creates a genuine issue of material fact as to whether the administrative remedy process was available to him. Although Plaintiff's general statement that he was hindered in his ability to fully exhaust his administrative remedies as to **all** of his claims is suspect, credibility determinations are not to be resolved by the Court on a motion for summary judgment, but are best left to the jury. Therefore, Defendants' motion for summary judgment is denied in this regard.

### B. Statute of Limitations

The Crawford County Defendants, as well as Defendant Nurse Rick, once again raise the

issue of the untimeliness of the filing of the Original Complaint.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions, but, it is well established that the federal courts must look to the relevant state's statute of limitations. Wilson v. Garcia, 471 U.S. 261, 266 (1985) (later overruled only as to claims under the Security Exchange Act of 1934. In Pennsylvania, the statute of limitations for a civil rights violation is two years from the date of the alleged violation. See Garvin v. City of Philadelpia, 354 F.3d 215 (3d Cir. (Pa.) 2003); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir.(Pa.) 1996).[11]

As Defendants correctly point out, the Original Complaint in this case was not received and filed by the Clerk of Courts until November 28, 2006, beyond the statute of limitations as to some of the claims alleged.

Because he was a prisoner, acting *pro se*, at the time of the filing of the Original Complaint, this Plaintiff has repeatedly been given the benefit of the prison mailbox rule which provides that an inmate's pleadings are deemed filed at the moment he delivers the documents to prison officials to be mailed, not the date the documents were received by the court. See Houston v. Lack, 487 U.S. 266, 275-76 (1988); Nichols v. Bowersox, 172 F.3d 1068, 1074 (8th Cir. 1999) (explaining "the 'prison mailbox rule' which, as the name suggests, would establish the date of filing as the date on which the prisoner puts the proverbial 'letter' in the proverbial 'mailbox'--in other words, the date on which he or she deposits the petition in the prison mail system."); Longenette v. Krusing, 322 F.3d 758 (3d Cir. 2003); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (prison mailbox rule provides that "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court.").

"Given the 'evidentiary difficulty in determining when a prisoner relinquishes control of the complaint to prison personnel' this date is presumed to be the date plaintiff gave the notice

---

[11]  To the extent that Plaintiff purports to raise pendent state law claims, a two-year statute of limitations period applies to those arising both in negligence (42 Pa.Cons.Stat.Ann.§ 8371) and intentional torts (42 Pa.Cons.Stat.Ann. § 5524).

to prison officials to be mailed." Crooker v. Wachovia Bank, 2010 WL 1996377 (E.D. Pa. May 13, 2010) quoting Taylor v. Naylor, 2006 WL 1134940, *3 (W.D. Pa. 2006). See also West v. Lockett, 2009 WL 1270225, at *4 n.2 (W.D. Pa. May 6, 2009) ("Absent proof of the exact date of delivering the ... petition to the prison authorities, the court will presume the date whereon Plaintiff signed his ... petition is the date he gave the prison authorities his ... petition for mailing."); Hodge v. Klopotoski, 2009 WL 3572262, at *15 (W.D. Pa. Oct. 26, 2009) ("In the absence of contrary evidence, a court will typically assume that a prisoner presented his or her petition to prison authorities for filing the same date that he or she signed it.").

However, the prison mailbox rule only creates a presumption, which may be overcome in the appropriate circumstances. Here, the original *pro se* complaint indicates on its face that it was signed and dated on November 15, 2006, even though it was not received by the Clerk of Courts until November 28, 2006. See ECF No. 1-1, pages 14-15; ECF No. 1-3, the accompanying motion for appointment of counsel, page 1. This length of time between November 15 and November 28 is suspect, especially in light of other documents now before this Court. The date the complaint was signed is not necessarily entitled to the presumption that it was delivered to prison officials for mailing on that same date.

Defendants have provided evidence in support of their position. While Plaintiff's Original Complaint is dated November 15, a letter from Schenck & Long, Attorneys at Law, to Plaintiff dated November 16th, references Plaintiff's letter to them received that same day and seeks their legal representation. ECF No. 144-1, page 59. This letter demonstrates that as of that date (presumably sent a day or two before November 16th), Plaintiff was still seeking counsel to represent him in this forthcoming action, which raises doubts as to Plaintiff's assertion that he delivered the pro se complaint to prison authorities for mailing to the District Court on November 15th.

Even more damning for Plaintiff is his letter dated November 25, 2006, to the Clerk of Courts of this district explaining his tardy filing:

> I also sent a sepaerate [sic] pakage [sic] (white vanialla [sic] envelope) today it contains my complaint and lawsuit Im' filing pro se against the Crawford County Correctional Facility [...] this jail here that I'm at (Mercer County Jail) the Lietentant (sic) named Lt. Heartsaw and Sgt. Crosby both told me Monday night that they would make me the copies I needed to send you I explained I was indigent and Lt. Heartsaw told me the "Mercer County Jail" would take care of all expensives (sic) (They will pay for the copies and the postage and handling to send the "white vallina [sic] envopel" that contains my lawsuit. I filed pro se. well, this jail made a mistake with the postage and haling they only put $1.97 [...] on the postage to sent to you, and I received the package (white vallina envoleop) back yesterday11-24-06 and it said on the white valling evnvolope postage due. [...] You would of got the white vallina enviope (my lawsuit) on 11-23-2006.

ECF No. 144-1, page 61. The envelope indicates that it was mailed on November 22, 2006. Id. at 62.

So then, Plaintiff's own letter indicating that the Clerk of Courts should have received the complaint on November 23, 2006, and the accompanying envelope postmarked November 22, 2006, are proof enough for this Court to overcome the presumption associated with the date of November 15, 2006, which was handwritten by Plaintiff on the motion for in forma pauperis and the Original Complaint.

A prisoner who wishes to invoke the presumption of the prison mailbox rule has an obligation to obtain as much information as to mailing dates as possible. Thomas v Kyler, 2004 WL 267391, at *4 (E.D. Pa. 2004); Koch v. Roberts, 68 F.3d 1191, 1193 n.3 (9th Cir. 1995)(prisoner who uses method that does not offer proof of when mailed assumes risk that he won't be able to prove when he handed items to prison authorities).

Here, after much discovery of this issue, it appears that the Mercer County Jail, at which Plaintiff was incarcerated at the time of the filing of the Original Complaint, had a less than precise system for logging outgoing prisoner mail. As counsel for the Crawford County Defendants acknowledges:

> it appears that Plaintiff submitted an envelope to Mercer County Prison personnel that was addressed to the District Court, on November 15, 2006. The Mercer County Prison personnel do not verify what was included for mailing. The envelope was ultimately mailed from Mercer County Prison with a postmark of November 22, 2006 and subsequently returned for postage due. There seems to be no explanation as to why there was insufficient postage for the initial mailing. Thereafter, a subsequent mailing, in what appears to be a different envelope, was mailed out from Mercer County Prison on November 27, 2006 (which is also not

> included on the Mercer County Prison Mail Log). This latter mailing presumably is the Plaintiff's Complaint with the letter from Schenck & Long, a law firm in Butler dated November 15, 2006.

ECF No. 205, page 3.

So then, Defendants' own position is that Plaintiff delivered an envelope to the Mercer County Prison authorities for mailing to the District Court on November 15, 2006, the date indicated on the Original Complaint, which makes this action timely filed. Defendants' motions for summary judgment are denied in this regard.


### C) Eighth Amendment - Medical Claims

All Defendants argue that Plaintiff's Eighth Amendment claim should be dismissed as they were not deliberately indifferent to his serious medical needs.

Despite the vague and general allegations of the counseled Second Amended Complaint, this Court construes the Eighth Amendment claims as consisting of four separate components. First, Defendants delayed in their medical treatment of Plaintiff on November 19th, following the first assault. Second, Defendants failed to provide the appropriate followup care to Plaintiff by way of the suture removal. Third, Defendants delayed in their medical treatment of Plaintiff on November 24, following the second assault. Fourth, Defendants denied Plaintiff's requests for psychological care.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d

Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at * 3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Powell v. Symons, 2010 WL 1485682, at * 3 (M.D. Pa. March 22, 2010).

Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the

18

prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

At this point, I will examine each of the four separate components of this claim individually.[12]

### 1) Emergency Care following the first assault on November 19th

In the Second Amended Complaint, Plaintiff alleges that "[d]ue to the severe injuries sustained, Plaintiff after a delay by Defendants that constituted deliberate indifference, was transported to the Meadville Medical Center where he was treated for lacerations and subsequently sutured." ECF No. 92, ¶ 27. The evidentiary record reflects that on November 19, 2004, Plaintiff was admitted to the Emergency Room of Meadville Medical Center at 1:35 pm. ECF No. 144-1, page 88. Despite the general allegation that there was a delay in Plaintiff's receiving medical treatment following the November 19th assault, there is no factual allegation as to the length of the alleged delay. The evidence points instead to emergency room treatment on the same day as the assault. See Rhines v. Bledsoe, 2010 WL 2911628, (3d Cir. July 27, 2010) (holding that one-month delay in inmate's receiving MRI for torn meniscus, while

---

[12] While Defendants have provided this Court with an expert report opining that the challenged medical care does not rise to the level of deliberate indifference, this conclusion is not entitled to any weight as it represents a legal conclusion. Whether Defendants' actions constituted deliberate indifference is a legal conclusion for the trier of fact to determine - an expert may not opine as to the actual legal question. "While experts may opine as to facts relevant to a legal conclusion, they are not permitted to draw that conclusion themselves." See In re Derivative Litigation, Herley Industries Inc., 2010 WL 1375195 (E.D. Pa. Feb. 5, 2010) quoting VIM, Inc. v. Somerset Hotel Ass'n, 19 F.Supp.2d 422, 428 n.4 (W.D. Pa. 1998).

possibly negligent, did not rise to the level of deliberate indifference); Small v. Visinsky, 2010 WL 2650497, at *3 (3d Cir. July 2, 2010) (holding that delay in providing therapy three times a week does not amount to deliberate indifference).

Accordingly, the motion for summary judgment will be granted as to this claim.


### 2) Followup Care for Removal of Sutures

Here, Plaintiff alleges that Defendants delayed in the followup care as prescribed by the Emergency Room physician following the first assault - i.e., that Plaintiff was to have the sutures removed from his mouth within five to seven days.

Deliberate indifference will be found where prison officials "intentionally deny[] or delay [] access to medical care or intentionally interfere[] with the treatment once prescribed." Hankey v. Wexford Health Sources, Inc., 2010 WL 2222923, at *3 (3d Cir. June 4, 2010) quoting Estelle, 429 U.S. at 104-05. Further, as the Third Circuit has explained:

> Acting with "reckless disregard" to a substantial risk of serious harm to a prisoner is consistent with deliberate indifference. See Farmer, 511 U.S. at 836. This Court has found that the standard is met when prison officials: 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, 3) erect arbitrary and burdensome procedures that result in interminable delays and outright denials of care, or 4) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment. See Monmouth, 834 at 346-47; see also Durmer, 991 F.2d at 68.

Cooleen v. Lamanna, 248 Fed. Appx 357, 360 (3d Cir. 2007).

The record reflects that upon his treatment at the Meadville Medical Center on November 19th, Plaintiff was released from the Emergency Room with written instructions: "for suture removal see your doctor or return to ED in 5-7 days." ECF No. 144-1, page 88. The record further reflects that only some of the sutures were removed the following March and one stitch was removed the following April. Id. at page 106 (March 2005 removal); page 83 (April

2005 removal).[13]  Further, the record reflects that Plaintiff sought the removal of the stitches beginning in late November.  Id. at  page 94.  Because the Second Amended Complaint does not name individuals, it is not clear who should have provided the followup care and who is being charged with not providing the care.  Nonetheless, the record demonstrates that followup care was prescribed by a doctor, Plaintiff made prison officials aware that followup care was overdue, and prison officials did nothing.

For these reasons, Defendants' motions for summary judgment will be denied as to this claim.

### 3)    Emergency Care following the second assault on November 24th

Summary judgment will be granted in favor of Defendants as to the Eighth Amendment claim stemming from the alleged delay in medical treatment following the second assault.  The evidence shows that Plaintiff was assaulted around 8:10 am and was received at the Meadville Medical Center on November 24, 2004 at 8:47am.  Thereafter, Plaintiff was transferred to Dr. Baretta's dental office for care.  ECF No. 144-1, page 4 (Lt. Denman's Memorandum); id. at page 68 (Meadville Medical Center Discharge Instructions).  Furthermore, the medical record reflects that Plaintiff was examined by a dentist on November 30, 2004, and again on December 15, 2004.  Id. at 89, 94, and 100.

The record belies any delay in medical treatment following the assault on November 24th.  Accordingly, the motion for summary judgment is granted as to this claim.

### 4)    Requests for Mental Health Care

---

[13]  Another document from the March 2005 visit explains: "using a pair of forceps and traction, it was rather difficult but I was able to pull the sutures from the underlying embedded skin and cut them out.  I was only able to remove three stitches and the patient insisted that there were six. ...  I told the patient that it [sic] these sutures were not dissolvable and I had told him back then and he knew that they were not dissolvable.  I told the patient that these sutures should have been removed in November." ECF No. 1-2, page 3.

Plaintiff makes the general allegation that his requests for psychological treatment were denied during his incarceration. Plaintiff does not specify when this denial of treatment took place, but for purposes of this motion and because Plaintiff is the non-movant, this Court will assume that these requests occurred after the assaults (otherwise, this claim may be barred by the statute of limitations). Indeed, the only mention of it in the Second Amended Complaint states that Defendants acted "with deliberate indifference with respect to Plaintiff's medical condition. These acts included but are not limited to ... a failure or refusal to address Plaintiff's request for mental health counseling." ECF No. 92, ¶ 33.

Again, the medical records before this Court belie Plaintiff's allegation that Defendants failed to address his mental health issues. The record reflects that Plaintiff was on the Mental Health Roster/Dr. Qureshi Patient List on December 27th and December 10th of 2004, and April 15th and March 18th of 2005. Patient List, ECF No. 144-1, pages 124, 125, 130, 132.

Also, in a Memo dated April 24, 2005, Nurse Saulsberry indicates:

> ... in reference to Inmate Dean Proper's request for counseling. Inmate Proper has seen Dr. Qureshi at Doctor Call numerous times as scheduled and also upon his request several times d/t problems he stated he was having. Dr. Qureshi has suggested to Inmate Proper that he should seek the services of the counselors available to him here at the [Crawford County Correctional Facility] vs. obtaining psychological services from an outside source. If this does not work he should then seek the services of a psychologist on the outside. It is my understanding that he has some counseling available to him if he so chooses thru (sic) Drug and Alcohol...

Id. at 93.

Prison medical staff "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir.1996). Here, some level of mental health care was offered to the inmate and he simply did not believe it to be adequate. Such disagreement does not rise to the level of an Eighth Amendment violation. See Josey v. Beard, 2009 WL 1858250, at * 6 (W.D. Pa.) citing Walker v. Fayette County, 599 F.2d at 575 n.2 (noting a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is

22

over the adequacy of the treatment).

The motion for summary judgment will be granted in this regard.

**D)** **Medical Negligence Claims**

Plaintiff also raises all four claims addressed above as allegations of medical negligence under Pennsylvania law.  Defendants argue that these claims should be dismissed because Plaintiff has failed to provide an expert as required by Pennsylvania law.

In order to establish a cause of action in medical negligence, plaintiffs bear the burden of demonstrating that there was (1) a duty or obligation owed by the physician, (2) breach of that duty by the defendants, (3) a causal connection between the defendants' breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant.   Wooding v. United States of America, 2007 WL 951494, at *3 (W.D. Pa.) quoting Quinby v. Plumstead Family Practice, Inc., 907 A.2d 1061, 1070 (2006).

Because the actions of a physician encompass matters not within the ordinary knowledge and experience of a layperson, Pennsylvania law requires that "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought."  Wooding, 2007 WL 951494, at *3, quoting Simpson v. Federal Bureau of Prisons, 2005 WL 2387631, at *5 (W.D. Pa.).  The Pennsylvania courts have explained this requirement:

> Courts sitting in medical malpractice cases require detailed expert testimony because a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care. [...] Not only does the plaintiff have the burden of proving that the defendant did not possess and employ the required skill and knowledge, or did not exercise the care and judgment of a reasonable professional, he or she must also prove that the injury was caused by the failure to employ that requisite skill and knowledge.  We have previously concluded that this must be accomplished with expert medical testimony presented at trial by doctors testifying as expert witnesses. [...] we affirm our earlier conclusion, set forth in numerous decisions of this Court that, medicine being an applied science, the realm of reasonable

choice is best defined by those engaged in the practice, and expert medical testimony on this issue is required.

Toogood v. Rogal, 573 A.2d 1140, 1149 (Pa. 2003). However, "expert testimony is not required when a matter 'is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons.'" Wooding, at *3, quoting Simpson, at *5.

In opposition to Defendants' argument, Plaintiff argues that many of the matters at issue here are "of lay understanding and are so obvious that any reasonable lay person would know that they needed to be done medically." ECF No. 178, page 17. This Court agrees with Plaintiff in regard to the failure to provide followup care for the removal of the stitches as even a layperson understands that the failure to remove stitches may result in pain and an exacerbation of the original injury. However, this Court does not agree with Plaintiff in regard to the three other claims of medical negligence – the alleged delay in treatment on both November 19th and 24th, as well as the alleged failure to provide mental health care. These claims require an expert to opine as to the breach and the proximate cause prongs of the negligence case. Montgomery v. South Philadelphia Medical Group, 656 A.2d 1385, 1390 (Pa. Super. 1995); Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990). Because Plaintiff has not identified such a medical expert, summary judgment should be granted as to these three portions of the state law medical negligence claims.

### E) "Negligence" in Hiring, Training and Supervising Staff

Plaintiff entitles Counts 3, 4 and 5 as "negligence" claims, but makes allegations of both state law negligence and constitutional violations. The Crawford County Defendants move for summary judgment as to the state law negligence portion of these claims only.

Pennsylvania recognizes a cause of action for negligent hiring, supervision and retention under common law and the Restatement (Second) of Torts § 317. See Croyle v. Smith, 2005 WL 4904831 (Pa.Com.Pl. 2005); Mahan v. Am-Gard, Inc., 841 A.2d 1052 (Pa.Super. 2003).

24

Defendants argue that these negligence claims should be dismissed because Plaintiff has failed to provide an expert to establish the standard of care as to the negligent hiring, supervision and retention. However, Defendants do not provide any legal citation for this proposition and this Court could find none. Accordingly, the motion for summary judgment will be denied in this regard.

### F) False Imprisonment Claim

In the Second Amended Complaint, Plaintiff makes the following allegations at this Count:

> 38.　... Plaintiff repeatedly advised Defendants, Crawford County Correctional Facility and its agents and employees, that he was indeed entitled to such jail time credit of sixty-six (66) days and further sets forth that Defendants had both actual and constructive knowledge of this fact, but were deliberately negligent and deliberately indifferent in that they deliberately failed and/or refused to act upon this information when there was clear and unambiguous duty of their part to do so ...

> 39.　Had Plaintiff been provided his said jail credit within a reasonable time, he would have been released from Defendant Crawford County Correctional Facility custody and control on October 13, 2004. However, Plaintiff [...] was not released until June 8, 2005.

> 40.　Plaintiff avers that from October 13, 2004 through June 8, 2005 he was held against this will, falsely imprisoned and wrongfully incarcerated by Defendants Crawford County Correctional Facility, their agents and employees ...

> 41　Despite diligent and continual demands by Plaintiff for the Defendants to investigate his entitlement, Defendants deliberately failed or refused to do so. ...

> 42.　All said Defendants' actions, and each of them, were recklessly negligent, wanton and willful and deliberately indifferent with respect to and as did regard Defendants' wrongful incarceration/false imprisonment of Plaintiff for that period of time from October 13, 2004 through June 8, 2005 and were done without justification, mitigation or excuse.

> 44.　As a direct and proximate result of the Defendants and each of their conduct, Plaintiff suffered painful and permanent physical and mental injuries and disabilities ...

ECF No. 92.

The Crawford County Defendants argue that Plaintiff's allegations at this Count are insufficient as a matter of law.[14]  In opposition, Plaintiff argues that "Plaintiff properly pled his 1983 claim as a due process violation and, depending on the facts alleged, could also properly assert an Eighth Amendment violation."  ECF No. 178, page 9.  Despite Plaintiff's argument, there is nothing in the Second Amended Complaint to indicate that Plaintiff is pursuing this issue as a due process violation.

In order to state an Eighth Amendment claim against a prison official arising out of false incarceration, a plaintiff must demonstrate three elements:

> (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted;
>
> (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and
>
> (3) a causal connection between the official's response to the problem and the unjustified detention.

Montanez v. Thompson, 603 F.3d 243, 255 (3d Cir. May 25, 2010) citing Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989). See also Moore v. Tartler, 986 F.2d 682, 686 (3d Cir.1993).  In assessing these factors, relevant circumstances include "the scope of the official's duties and the role the official played in the life of the prison." Montanez, 603 F.3d at 255.

Here, Plaintiff has not met the pleading standard as he has identified no prison official besides "Crawford County Correctional Facility, their agents and employees."  Further, the Crawford County Defendants have provided an expert in support of their motion for summary judgment on this claim.  In his report, Jeff Eiser, Criminal Justice Consultant and Jail Operations Expert, provides:

> Inmate Proper's complaint that he did not get immediate credit for days he served in a jail in South Carolina (awaiting extradition) was not within the authority of the jail to resolve. [...] When he served his time on the local charges in South

---

[14]  Defendants also argue that Plaintiff's credit claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny, an argument that this Court need not reach here.

Carolina, he was extradited back to Crawford County. Inmate Proper claims the jail should have immediately credited him the days he spent in the South Carolina jail awaiting his extradition to Pennsylvania. Based upon my training, education and experience, a jail or prison does not have the statutory or legal authority to credit time for days served in a jail in another state. Generally, that is a decision made by the court having original jurisdiction on the warrant.

\* \* \*

In this case, the responsibility of the facility is to ensure Mr. Proper's access to his legal counsel and is able to correspond freely with the authorities in South Carolina. A jail facility must have proper documentation to receive a prisoner and must also have proper documentation to release a prisoner. That is exactly what happened in this case.

\* \* \*

Therefore, based upon my training, education and experience, the policies, procedures and practices of the Crawford County Correctional Facility, as it relates to the Inmate Release Procedure, particularly as applied in this case to the Plaintiff, are adequate and in compliance with corrections industries, practices and standards.

Expert Report, ECF No. 133.

Plaintiff has not provided any evidence to the contrary, as he must in the face of a supported motion for summary judgment, see Celotex, 477 U.S. at 322, and so, summary judgment will be granted in favor of the Crawford County Defendants on this claim.

### G) Qualified Immunity

Alternatively, the Crawford County Defendants contend that they are entitled to qualified immunity because it was objectively reasonable for the Individual Defendants to believe that they did not violate any clearly established constitutional rights by making the decisions at issue in this case. Defendants only raise this defense in relation to the lack of medical treatment. ECF No. 145, page 18.

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002).[15]

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, 536 U.S. 730; Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).[16]

---

[15]  In other words, "[w]hen an officer's actions give rise to a §1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them from undue interference with their duties and from potentially disabling threats of liability. The privilege of qualified immunity, however, can be overcome when state officials violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. City of Philadelphia, 409 F.3d 595, 599-600 (3d Cir. 2005) (internal citations omitted), declined to follow on other grounds, Kossler v. Crisanti, 564 F.3d 181, 193 (3d Cir. Apr. 21, 2009).

[16]  However, the rigid two-step inquiry set forth in Saucier has been relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808 (Jan. 21, 2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. 2009). As the Supreme Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. The Supreme Court has observed:

> for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent.

Hope, 536 U.S. at 739. In other words, "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Montanez v. Thompson, 603 F.3d 243, 251 (3d Cir. May 25, 2010) quoting Bayer v. Monroe County Children & Youth Serv., 577 F.3d 186, 193 (3d Cir. 2009).

In this case, the legal precedent regarding a prisoner's Eighth Amendment right to be free from cruel and unusual punishment has been well established for many years. Estelle v. Gamble, 429 U.S. 97 (1976); Farmer v. Brennan, 511 U.S. 825 (1994). Thus, a reasonable government officer would be on notice that the conduct alleged here (the failure to provide the prescribed followup medical treatment) was unlawful.

Accordingly, Defendants are not entitled to qualified immunity and the motion for summary judgment will be denied in this regard.

An appropriate Order follows.

_____

decisionmaking [that] will best facilitate the fair and efficient disposition of each case." Pearson, 555 U.S. at ___, 129 S.Ct. at 821. See also DeLauri v. New Jersey Div. of State Police, 2009 WL 222983, at *5 (D.N.J. 2009) quoting Pearson, ___ U.S. at ___, 129 S.Ct. at 818-20; Jarovits v. Monroe County Children and Youth Services, 2009 WL 3004044, at *3 (3d Cir. Sep.21, 2009) (proceeding directly to the second step of the Saucier analysis).

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEAN PROPER** | ) | |
| **Plaintiff,** | ) | |
| | ) | **C.A. No. 06-279 Erie - LEAD** |
| **v.** | ) | |
| | ) | |
| **CRAWFORD COUNTY** | ) | |
| **CORRECTIONAL FACILITY, et al.,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

**O R D E R**

AND NOW, this 24th day of September, 2010;

IT IS HEREBY ORDERED that Crawford County Defendants' motions for summary judgment [ECF Nos. 144 and 205] are GRANTED IN PART AND DENIED IN PART. More specifically, summary judgment is granted as to the false imprisonment claim, and granted as to the medical claims arising under the Eighth Amendment and state negligence law relating to the delays in treatment on November 19th and 24th, and the requests for mental health care. The motion for summary judgment is denied as to the medical claims arising under the Eighth Amendment and state negligence law from the failure to provide followup care for the sutures, and denied in all other regards.

IT IS FURTHER ORDERED that Defendant Nurse Rick's motion for summary judgment [ECF No. 146] is GRANTED IN PART AND DENIED IN PART. More specifically, the motion is granted as to the medical claims arising under the Eighth Amendment and state negligence law relating to the delays in treatment on November 19th and 24th, and the requests for mental health care. The motion for summary judgment is denied as to the medical claims arising under the Eighth Amendment and state negligence law from the failure to provide followup care for the sutures, and denied in all other regards.

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge